UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**GINA MOCCIO,**

    **Plaintiff,**

v.                                                        Case No. 8:21-CV-00210-KKM-AEP

**THE BOSSBABE SOCIETE,**

    **Defendant.**

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Plaintiff GINA MOCCIO ("Plaintiff"), by and through her undersigned counsel, hereby files this Response in Opposition to Defendant's Motion to Dismiss For Lack of Personal Jurisdiction or, In the Alternative, to Transfer Venue, and states as follows:

INTRODUCTION

On March 30, 2021, Defendant The BossBabe Societe, Inc., filed a Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and for improper venue under 28 U.S.C. § 1406, or in the alternative, to transfer to the Central District of California. Docket Entry ("Dkt. No.") 14. Defendant argues that Plaintiff has failed to meet its "burden of establishing contacts by [Defendant] sufficient to invoke the

jurisdiction of the Court . . . as it presents *no evidence* showing personal jurisdiction is proper over this California defendant." Dkt. No. 14, p. 7 (emphasis in original).

## LEGAL STANDARD

"A motion to dismiss for lack of personal jurisdiction 'should be denied if plaintiff alleges sufficient facts to support a reasonable inference that defendant can be subjected to jurisdiction of the court.'" *3Q Techs., Ltd. v. Canfield Sci., Inc.*, No. CIV.A. 1:05CV2454-RL, 2006 WL 1455663, at *3 (N.D. Ga. May 16, 2006) (quoting *Jackam v. Hosp. Corp. of Am. Mideast*, 800 F.2d 1577, 1579 (11th Cir. 1986)). "On a motion to dismiss for lack of personal jurisdiction, the court must take the plaintiff's allegations as true to the extent they are uncontradicted, and if they are contradicted the court must construe all reasonable inferences in the plaintiff's favor." *Id*. (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). "[T]he party invoking federal court jurisdiction over a non-resident defendant bears the burden of establishing the court's jurisdiction." *Id*.

## ARGUMENT

I. **PLAINTIFF HAS SUFFICIENTLY ALLEGED THAT THIS COURT HAS JURISDICTION OVER THE DEFENDANT.**

Defendant argues that Plaintiff must provide "circumstantial information" to support her allegations plead on information and belief or that her complaint must dismissed with prejudice. Dkt. No. 14, p. 6 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 551 & 564-70 (2007)). In fact, Defendant boldly contends that Plaintiff's "allegations are baseless [and] . . . are not and cannot be plausible."

Outside of the context of fraud, it is well settled that "pleading based on information and belief is generally permitted." *Orange Lake Country Club, Inc. v. Castle L. Grp., P.C.*, No. 617CV1044ORL31DCI, 2017 WL 6419006, at *3 n.3 (M.D. Fla. Dec. 15, 2017) (citing 5 Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 1224 (3d ed.)). This rule holds true even after the Supreme Court's decision in *Twombly*. *See* Wright, 5 FED. PRAC. & PROC. § 1224. Defendant's position that "information-and-belief allegations are not entitled to the assumption of truth lacks merit. The rule is not that allegations made upon information and belief may be summarily disregarded. Rather, the *Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the belief is based on factual information that makes the inference of culpability plausible." *Zhejiang Dushen Necktie Co. v. Blue Med, Inc.*, No. 16-24679-CIV, 2017 WL 4119604, at *6 (S.D. Fla. Sept. 18, 2017) (internal quotation marks and alterations omitted).

For purposes of determining whether the Court may exercise personal jurisdiction over a defendant, "Plaintiff's short and plain statement in her [complaint] that [the defendants], 'on information and belief,' 'conduct[] business' in the [forum state], if proper and true, would establish personal jurisdiction sufficient to survive a motion to dismiss based solely on the language in the pleadings." *Griffin v. Bouma Corp.*, No. 5:08-CV-342 (CAR), 2009 WL 10674136, at *4 (M.D. Ga. Feb. 3, 2009). Defendant's challenge to the sufficiency of the allegations must be rejected.

II. **THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANT AS A MATTER OF LAW.**

Plaintiff has alleged that "Defendant's injury to Moccio in violating the trademark and fair competition rights affected Moccio in this state, where she is a resident and engages in commerce." Dkt. No. 4, ¶ 5. Plaintiff has also alleged on information and belief that "Defendant has solicited and contracted to provide services to individuals located in Florida and engaged in commercial activity in Florida by performing such services or solicitation" and that "Defendant provided those services in Florida under the" Plaintiff's mark or a confusingly similar variation of the mark. *Id*. Plaintiff also asserts that "Defendant has caused social entertainment events, media content, and social media engagement of a type very similar to those of Plaintiff to enter into interstate commerce with the designations 'BossBabe,' 'Boss Babe Societe,' and confusingly similar variations of Plaintiff's mark." *Id.*, ¶ 37. "These allegations established a prima facie case of jurisdiction over [Defendant]." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1351 (11th Cir. 2013).

To rebut the prima facie case, Defendant must "set forth specific factual declarations within the affiant's personal knowledge." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999). Where the defendant's affidavits do not contract the plaintiff's pleadings, courts "accept the allegations stated in the complaint as true for purposes of resolving the jurisdictional issue under the requirements of the Florida long-arm statute and the Due Process Clause." *Id.*; *see also Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (holding that even when a defendant submits evidence supporting his jurisdictional position, we still "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits").

### A. *Florida's long-arm statute provides a basis for jurisdiction.*

"The reach of Florida's long-arm statute 'is a question of Florida law,' and this Court is required to apply the statute 'as would the Florida Supreme Court.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Florida's long-arm statute provides for both general and specific personal jurisdiction." *Id.* (citing Fla. Stat. § 48.193(1)-(2)).

> General personal jurisdiction is based on a defendant's substantial activity in Florida without regard to where the cause of action arose. On the other hand, specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action.

*Id.* at 1352.

Section 48.193(1)(a)(2) provides that a nonresident defendant is subject to personal jurisdiction in Florida "for any cause of action arising from . . . [c]omitting a tortious act within [Florida]." Fla. Stat. § 48.193(1)(a)(2). The Eleventh Circuit's decisions in *Louis Vuitton* and *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) – the decision on which the court in *Louis Vuitton* relied – govern cases involving a website-trademark infringement claim against a nonresident defendant and the "tortious act" provision, Fla. Stat. § 48.193(1)(a)(2), in this state's long-arm statute. The Eleventh Circuit tells the story of *Lovelady* eloquently:

> In *Lovelady*, the plaintiff, Licciardello, a nationally-known entertainer, sued defendant Lovelady, his former personal manager in the Middle District of Florida. Licciardello alleged that Lovelady had wrongfully used Licciardello's trademarked name and picture on Lovelady's Internet website "*accessible to the*

> *public in Florida* that promoted Lovelady as a personal manager for music artists." Defendant Lovelady lived in Tennessee, created his website in Tennessee, and moved to dismiss for lack of personal jurisdiction over him in Florida. The district court granted the motion for lack of jurisdiction over defendant Lovelady in Florida.
>
> Reversing, this Court concluded that the plaintiff's allegations in the complaint were sufficient to establish personal jurisdiction in Florida over defendant Lovelady under the "tortious acts" provision in § 48.193(1)(a)(2). While Lovelady did not expressly analyze whether trademark infringement claims are tort claims, Lovelady treated them as tortious acts.

*Id*. at 1353 (citing *Lovelady*, 544 F.3d at 1282-84) (internal citations and footnote omitted) (emphasis in *Louis Vuitton*).

"[U]nder Florida law, a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act outside the state that causes *injury within Florida*." *Id*. (citing *Lovelady*, 544 F.3d at 1283) (emphasis in original). Likewise, "[u]nder the 'tortious acts' provision in § 48.193(1)(a)(2), a trademark infringement on an Internet website causes injury and occurs in Florida 'by virtue of the website's accessibility in Florida.'" *Id*. (quoting *Lovelady*, 544 F.3d at 1283).

In *Lovelady*, the defendant lived in and created the website which included the infringing mark in Tennessee, while the plaintiff owner of the mark resided in Florida. 544 F.3d at 1282-83. The difference, however, was of no moment. According to the Eleventh Circuit's decision in *Louis Vuitton*, the court in *Lovelady* reasoned that it "need not decide whether trademark injury necessarily occurs where the owner of the mark resides, as the Florida district courts have held, *because in this case the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida*." *Id*. (quoting *Lovelady*, 544 F.3d at 1283) (emphasis in original).

Page 6 of 18

In this case, Danielle Canty, Defendant's co-founder and president, has admitted that Defendant receives a "small percentage of its business from Florida" and that it "transacts only a very small portion of its business (under 5%) in the State of Florida[.]" Declaration of Danielle Canty ("Canty Decl."), Dkt. No. 14-7, ¶¶ 4-5. Defendant has admitted to providing a host of services online, through its website and mobile application (or "app"). Defendant's petition to cancel Plaintiff's mark states that it "has used the BOSSBABE trademark in association with . . . *on-line* journals, namely, *blogs* featuring articles and information pertaining to business, entrepreneurship and women's empowerment; . . . *providing a website featuring blogs* and non-downloadable publications in the nature of articles and information . . . ; providing a *website* featuring non-downloadable videos on inspirational or motivational topics for women[.]" Dkt. No. 14-2, ¶ 2. Defendant sought to cancel Plaintiff's federally registered mark so that it could use a confusingly similar version of the mark "*computer application software for mobile phones and handheld devices*" and "downloadable *computer game software* via a global computer network and wireless devices" among other uses. *Id.*, ¶ 3. Plaintiff has also alleged that Defendant has engaged with the Florida market through its social media platform, rendering its web presence accessible in Florida. *See* Dkt. No. 4, ¶ 37. Taken together, the record establishes that Defendant's activities meet the requirement for applying Florida's long-arm statute.

  **B.** ***Defendant has sufficient minimum contacts with Florida to satisfy the Fourteenth Amendment's Due Process Clause.***

A court may assert jurisdiction over a nonresident defendant where its "contact with the state is such that he has 'fair warning' that he may be subject to suit there." *Lovelady*, 544 F.3d at 1284 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)). "This 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id*. (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "In this way, the defendant could have reasonably anticipated being sued in the forum's courts in connection with his activities there." *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

"Even where a defendant has purposefully established constitutionally significant contacts within the forum state, jurisdiction must also be evaluated in light of several other factors to determine whether its exercise would comport with 'fair play and substantial justice.' *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). "[A] defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)) (internal quotation marks omitted).

"[T]he constitutional litmus test for personal jurisdiction is whether the defendant 'purposefully established minimum contacts in the forum State.' Jurisdiction may be constitutionally asserted over the nonresident defendant whenever

he has by his own purposeful conduct created a 'substantial connection with the forum state.'" *Id.* at 1285 (quoting *Burger King*, 471 U.S. at 473-75) (internal quotation marks omitted). "So long as it creates a 'substantial connection' with the forum, even *a single act* can support jurisdiction." *Id.* (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)) (emphasis added). Defendant's attempt to minimize its profits in Florida, describing them as a "small percentage," a "very small portion of its business (under 5%)," and a "very minor (under 5%) portion of BossBabe's customer base," *see* Canty Decl., Dkt. No. 14-7, ¶¶ 4-5, is dissembling and disingenuous. Five percent of all of its transactions and customers is far beyond a "single act." It certainly warrants bringing Defendant into court in Florida.

"Intentional torts are [single] acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Lovelady*, 544 F.3d at 1285 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). In *Calder*, the location of the parties was the reverse of this case, wherein a California plaintiff sued a Florida newspaper for what the court determined was an "'intentional and allegedly tortious act," namely the publication of a libelous article. The Supreme Court held that the plaintiff's home state "was the focal point of the tort and jurisdiction was proper there based on the 'effects' in [the plaintiff's home state] of defendants' [out-of-state] conduct." *Id.* at 1284-85 (quoting *Calder*, 465 U.S. at 789). The Supreme Court concluded that "[a]n individual injured in [her home state] need not go to [the defendant's state] to seek redress from persons who, though remaining

in [the defendant's state], knowingly cause the injury in [the plaintiff's home state]." *Id.* at 1285 (*Calder*, 465 U.S. at 790)).

"In tort cases, . . . jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state." *Id.* at 1286 (quoting *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995)). Defendant knew that Plaintiff operated and used her registered mark in Florida. In fact, Defendant pursued Plaintiff's mark so aggressively that it filed a petition for cancellation against her with the U.S. Patent and Trademark Office to throw out Plaintiff's mark and replace it with its own. Defendant knew about Plaintiff's business, her mark, and wanted to seize the mark for its own portfolio. Defendant aimed its infringing use of Plaintiff's mark at Florida and engaged in business transactions with Florida residents to the tune of *five percent* of its business. Defendant took advantage of the goodwill Plaintiff developed in her mark in this state.

Like the defendant in *Lovelady*, who allegedly used the plaintiff's mark "on a website accessible in Florida" to take advantage of Plaintiff's goodwill in her own home state and market, "[t]he Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over [BossBabe Societe] because [its] intentional conduct in [Plaintiff's] state of residence was calculated to cause injury to [Plaintiff] in Florida. [BossBabe Societe] cannot now claim surprise at being haled into court here." *Id.* at 1288 (citing *Calder*, 465 U.S. at 791).

  **C.**  *Exercising jurisdiction over Defendant in this state is consistent with fair play and substantial justice.*

Given that Defendant has made "constitutionally sufficient contact with Florida," exercising jurisdiction over comports with fair play and substantial justice. "Relevant factors [to consider] include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Id*. (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

*Lovelady* remains squarely on point. "In this case, the Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy." *Id*. (citing *Calder*, 465 U.S. at 790). "Additionally, Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Id*. (citing *Allerton v. State Dep't of Ins.*, 635 So. 2d 36, 40 (Fla. 1st DCA 1994)); *see also Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 632 (11th Cir. 1996). "The Constitution is not offended by Florida's assertion of its jurisdiction over such nonresident tortfeasors." *Id* (citing *Calder*, 465 U.S. at 791). All of these considerations warrant denying Defendant's Motion to Dismiss

### III. THIS COURT HAS PROPER VENUE OVER THE ACTION AND NEITHER DISMISSAL NOR TRANSFER ARE WARRANTED.

"A civil action may be brought in a judicial district in which a substantial part of the events . . . giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Venue in the Middle District of Florida is proper because "the brunt of the harm and a substantial part of the property involved—the [plaintiff's] intellectual property—

occurs and is situated in" this judicial district. *See Barbour Racing Int'l, LLC v. Exoto, Inc.*, No. 1:10-CV-2825-CAP, 2011 WL 13214400, at *5 (N.D. Ga. Mar. 16, 2011). Defendant has intentionally infringed Plaintiff's mark, directed its infringement at this district based on Plaintiff's presence in this district and the use of her intellectual property in this district. Consequently, the Court should deny Defendant's Motion to Dismiss for improper venue.

## IV. IT IS IMPROPER TO TRANSFER THE CASE TO CALIFORNIA.

Where a court determines that it may not exercise personal jurisdiction over a defendant, a transfer of venue is the appropriate remedy. The transfer statute states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "In determining the balance of convenience, the Court considers: 1) plaintiff's initial choice of forum; 2) convenience of the parties and witnesses; 3) relative ease of access to sources of proof; 4) availability of compulsory process for witnesses; 4) location of relevant documents; 6) financial ability to bear the cost of the change; and 7) all other practical problems that make trial of the case easy, expeditious and inexpensive. Transfer is appropriate only when a defendant establishes that the balance weighs strongly in favor of transfer." *Pelc v. Nowak*, No. 8:11-CV-79-T-17TGW, 2011 WL 4481571, at *6–7 (M.D. Fla. Sept. 27, 2011) (internal citation omitted); *Opus Nw. Constr. Corp. v. Opus Communities, Inc.*, No. 05-60366-CIV, 2006 WL 8432125, at *1 (S.D. Fla. Mar. 21, 2006) ("The burden is on the

party moving for a transfer to establish that the balance of convenience is strongly in favor of transfer, and heavily outweighs the plaintiff's choice of forum.")

### A.   *Plaintiff's initial choice of forum*

Plaintiff has chosen the Middle District of Florida as her forum. Plaintiff resides in this district and conduct business in this district. Although Defendant committed certain tortious acts in another forum, Defendant's intentional torts had an impact on Plaintiff in Florida. This factor weighs against transfer.

### B.   *Convenience of the parties and witnesses*

The witnesses in this matter may largely reside in Florida. Those witnesses would include the Plaintiff and the customers of the parties. Individuals to whom Defendant directed its services and with whom it entered into transactions as well as Plaintiff who have participated in Plaintiff's services may provide relevant evidence to establish confusion or likelihood of confusion in this market. No such witnesses reside in California because the gravamen of the complaint asserts an injury in Florida. To the extent the testimony of a California witness is necessary and the witness does not want to testify in Florida, the witness can be deposed in California. This factor weighs against transfer.

### C.   *Relative ease of access to sources of proof; location of relevant documents[2]*

Since Plaintiff, her business and her customer base are in Florida, the location of relevant documents which proves her damages are also in Florida, and Defendant

---

[2] These factors are related and the Court may consider them together. *Pelc*, 2011 WL 4481571, at *7.

can send any documents Plaintiff requires electronically. These factors both weigh against transfer.

        D.     *Availability of compulsory process for witnesses*

The foreseeable relevant California witnesses would be officers and employees of the Defendant corporation. Those individuals may be required to participate in the action without compulsory service of process because they are parties to the case. This factor weighs against transfer.

        E.     *Financial ability to bear the cost of the change*

Plaintiff is an individual while Defendant is a corporation with significant financial resources. Requiring Ms. Moccio to litigate this case in California would pose a significant financial hardship. Transferring the case from Florida to California would merely shift the financial burden from the large corporate defendant and into the individual plaintiff in this case. This factor also weighs against transfer.

        F.     *All other practical problems that make trial of the case easy, expeditious and inexpensive*

While it would be more convenient and less expensive for Defendant if this case were transferred to California, Plaintiff resides in Florida, does business in Florida, chose this forum, has witnesses in Florida, and has access to relevant documents in Florida. While there may be some inconvenience to California witnesses, "technology has reduced the burdens of litigation," *see Pelc*, 2011 WL 4481571, at *8 – particularly in light of the COVID-19 pandemic, which has almost universally led parties to conduct depositions and testimony in evidentiary hearings on virtual conference

platforms like Zoom and Skype rather than in person. Ms. Moccio's choice of forum is not clearly outweighed by the consideration of convenience, cost, judicial economy, and expeditious discovery and trial process to justify the transfer of this case to the Central District of California under Section 1404. Consequently, Defendant's motion to transfer the action to the Central District of California should be denied.

V. **PLAINTIFF REQUESTS LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY AS AN ALTERNATIVE TO DISMISSAL OR TRANSFER OF THE CASE.**

To the extent there is any doubt regarding the Court's jurisdiction over Defendant, the Plaintiff requests permission to engage in jurisdictional discovery to support its allegations. "[I]n deciding a motion to dismiss on grounds that personal jurisdiction is lacking, the Court must accept the facts alleged in the Complaint as to jurisdiction to be true to the extent that they are not controverted by the defendant. Once the plaintiff establishes a jurisdictional basis, the defendant bears the burden to overcome it. It may do so by submitting affidavits and other evidence to challenge the jurisdictional allegations of a plaintiff's complaint. If the defendant sufficiently challenges the jurisdictional allegations, the plaintiff must substantiate the jurisdictional allegations in [her] complaint by affidavits, testimony, or documents." *Griffin v. Bouma Corp.*, No. 5:08-CV-342 (CAR), 2009 WL 10674136, at *2 (M.D. Ga. Feb. 3, 2009) (internal citation, quotation marks and alterations omitted)). "In such cases, jurisdictional discovery may be appropriate." *Id*. (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997)).

Defendant's primary contention that Plaintiff's jurisdictional allegations are insufficient to the extent Plaintiff has plead them on information and belief does not warrant granting the motion to dismiss without leave to conduct jurisdictional discovery. *See United Parcel Serv., Inc. v. Eclipse IP LLC*, No. 1:11-CV-2138-CAP, 2012 WL 13008802, at *6 (N.D. Ga. July 3, 2012) (denying defendant's motion to dismiss in favor of jurisdictional discovery where defendant "simply brush[ed] off [plaintiff's] jurisdictional allegations" by arguing that plaintiff UPS plead allegations "on information and belief").

Discovery is appropriate because the allegations in Plaintiff's complaint "suggest the possible existence of requisite contacts between [Defendant] and [Florida] with reasonable particularity." *Amerifactors Fin. Grp., LLC v. Enbridge, Inc.*, No. 6:13-CV-1446-ORL-22, 2013 WL 5954777, at *6 (M.D. Fla. Nov. 7, 2013) (quoting *Commissariat à L'Energie Atomique*, 395 F.3d at 1323 (11th Cir. 2006)). Defendant's own admission that Florida consumers constitute five percent of its overall business also supports Plaintiff's jurisdictional allegations. Defendant operates in the Florida market and generates profit from it, all the while using a confusingly similar variation of Plaintiff's mark. Indeed, even BossBabe Societe's name is confusingly similar to Plaintiff's mark, BOSS BABE CLUB. These facts warrant further investigation to prove that Defendant's contact with the forum warrants exercising personal jurisdiction over Defendant in this state.

"Limited jurisdictional discovery is appropriate where the information plaintiff seeks, if it exists, would give rise to jurisdiction." *Evans v. Andy & Evan Indus., Inc.*, No.

15-61013-CV, 2015 WL 13260392, at *1 (S.D. Fla. Nov. 23, 2015) (internal quotation marks omitted). Plaintiff has alleged that Defendant has solicited, entered into agreements, and provided services in Florida under Plaintiff's BOSS BABE CLUB trademark "on information and belief," *see* Dkt. No. 4, ¶ 5, precisely because she requires the additional evidence of Defendant's activity in Plaintiff's market in Florida to support its claim for trademark infringement and unfair competition. To support her allegations, Plaintiff would specifically seek discovery related to the following areas:

1. Defendant's direct and indirect advertising and solicitation efforts, including but not limited to, the mailing list of Defendant's mass e-mails advertising its goods and services using any mark that infringes the BOSS BABE CLUB mark, including all derivative marks;
2. Information relating to attendees of its online events in Florida;
3. All contracts and online transactions with Florida consumers; and
4. Any other relationship between Defendant and the state of Florida that involves the use of Plaintiff's BOSS BABE CLUB mark or any confusingly similar variation thereof.

WHEREFORE, Plaintiff requests that the Cour deny Defendant's Motion to Dismiss or Transfer. In the alternative, Plaintiff requests that the Court permit jurisdictional discovery and allow Plaintiff to amend her Complaint to the extent any information obtained in discovery warrants any amendment of Plaintiff's allegations

as to jurisdiction and venue; and any further relief that this Court deems just and proper.

DATED April 19, 2021.   Respectfully submitted,

THE BENKABBOU LAW FIRM, PLLC

*/s/ Salma Benkabbou*
Salma Benkabbou, Esq.
Florida Bar No. 112385
Jade Alexander Craig, Esq.
Florida Bar No. 121805
620 E. Twiggs Street, Suite 303
Tampa, Florida 33602
Primary: salma@benkabboulawfirm.com
Primary: jade@benkabboulawfirm.com
Secondary 1: blfbusinessteam@gmail.com
Secondary 2: admin@benkabboulawfirm.com
Phone: (813) 586-3351
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing document has been furnished on all counsel of record via the Case Management/Electronic Court Filing System.

*/s/ Salma Benkabbou*
Attorney