UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GINA MOCCIO,

    Plaintiff,

v.                                         Case No: 8:21-cv-0210-KKM-AEP

THE BOSSBABE SOCIETE, INC.,

    Defendant.
_____

## ORDER

    Defendant The BossBabe Societe, Inc. filed a motion to dismiss Plaintiff Gina Moccio's amended complaint for lack of personal jurisdiction and improper venue. (Doc. 14.) Moccio alleges that BossBabe, a California-based company, infringed her trademark, thereby committing a tort in Florida and causing her injury in Florida. Those allegations—along with BossBabe's admissions—suffice for personal jurisdiction in Florida and establish that venue is appropriate and convenient in the Middle District of Florida. Therefore, this Court denies BossBabe's motion.

    I.    **BACKGROUND**

    Moccio, a Florida resident, offers small business owners a variety of services using the registered trademark "Boss Babe Club." (Doc. 4 at 1–3.) These services include

"arranging, organizing, conducting, and hosting social entertainment events;" hosting a website, and creating an interactive, on-line community for business owners. (Doc. 4 at 2.) As a result of Moccio's efforts, the Boss Babe Club "mark has become well-known and recognized in the public as a strong indicator of [Moccio's] services." (Doc. 4 at 5.)

Over two years after Moccio began using the name "BossBabe Club," on October 23, 2018, The BossBabe Societe, Inc. filed an application with the U.S. Patent and Trademark Office (USPTO) for the mark "BOSS BABE." (Doc. 4 at 4.) The USPTO denied registration, saying that the mark was confusingly similar to Moccio's mark. (Doc. 4 at 4.) BossBabe then file a petition with the USPTO to cancel Moccio's mark. (Doc. 4. at 4.)

While that dispute was pending before the U.S. Trademark Trial and Appeal Board, (Doc. 4 at 4), Moccio filed this action on January 17, 2021, (Doc. 4 at 1). Moccio brings federal and common law trademark infringement, false designation, and unfair competition claims, alleging that BossBabe "offers similar, if not identical, services as [Moccio] and provides those services and uses [Moccio's] Mark or [a] confusingly similar variation[] thereof in providing those services in Florida." (Doc. 4 at 4.)

On March 30, 2021, BossBabe moved this Court to dismiss or transfer the action to the Central District of California for lack of personal jurisdiction or improper venue. (Doc. 14.) Moccio filed a response in opposition on April 19, 2021. (Doc. 21.) After

2

acquiring leave from the Court (Doc. 24), BossBabe filed a reply on May 14, 2021. (Doc. 25.)

## II. LEGAL STANDARD and ANALYSIS

For this Court to retain this action, it must have personal jurisdiction over BossBabe pursuant to Florida's long-arm statute that does not offend the Due Process Clause, and the Middle District of Florida must be a proper and convenient District in which to adjudicate the action.

### A. This Court May Exercise Personal Jurisdiction Over BossBabe

Federal courts use a two-step inquiry in determining whether personal jurisdiction over a non-resident defendant is proper. *See Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). First, a federal court sitting in Florida must determine whether Florida's long-arm statute provides for jurisdiction. *Id.* at 1295. Second, a court must "examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause." *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005) (quotation omitted); *see Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–26 (2021).

The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260,

1274 (11th Cir. 2009)). "Vague and conclusory allegations do not satisfy this burden." *Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 946 (11th Cir. 2018). The burden then "shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1202 (11th Cir. 2015). In doing so, the defendant must present evidence to counter the complaint's allegations. *See Internet Sols.*, 557 F.3d at 1295. "Where . . . the Defendant submits affidavit(s) to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

> i. **Florida's Long-Arm Statute Provides for Personal Jurisdiction Over BossBabe**

"Because the reach of the Florida long-arm statute is a question of Florida state law, federal courts are required to construe [the long-arm statute] as would the Florida Supreme Court." *Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890–91 (11th Cir. 1983). Applying state law, the Court concludes that Moccio satisfies Florida's long-arm statute by showing "sufficient jurisdictional facts to bring the action within the ambit of [Florida's long-arm statute]." *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010) (quotation omitted).

4

Florida's long-arm statute provides that a "person, whether or not a citizen or resident of this state, who . . . does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from . . . . [c]ommitting a tortious act within this state." § 48.193(1)(a), Fla. Stat. The statute "bestows broad jurisdiction on Florida courts. A court can exercise personal jurisdiction, *inter alia*, whenever a foreign corporation commits a 'tortious act' on Florida soil." *Marshall*, 39 So. 3d at 1207. But the statute is "strictly construed, and the person invoking jurisdiction under it has the burden of proving facts which clearly justify [its] use." *Oriental Imps. & Exps.*, 701 F.2d at 891.

In response to BossBabe's claims that the long-arm statute is not satisfied, Moccio invokes the tortious acts provision of the long-arm statute.[1] "For purposes of § 48.193(1)(a)(2), the issue is whether [Bossbabe's] tortious acts caused injury in Florida." *Mosseri*, 736 F.3d at 1354. Under "Florida law, a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act *outside* the state that causes *injury within Florida*." *Id.* at 1353 (quoting *Licciardello v. Lovelady*, 554 F.3d 1280, 1283 (11th Cir. 2008)). "[T]rademark claims are 'tortious acts' for purposes of Florida's long-arm statute." *Id.* An injury occurs in Florida when a website containing the alleged infringement is accessible and accessed in Florida, or when alleged infringing goods are sold to Florida

---

[1] Moccio does not assert that the other provisions of the long-arm statue apply.

customers. *See Marshall*, 39 So. 3d at 1216; *Mosseri*, 736 F.3d at 1354. Upon review, BossBabe's own evidence carries Moccio's "burden of proving facts which clearly justify" personal jurisdiction under Florida's long-arm statute. *Oriental Imps. & Exps.*, 701 F.2d at 891.

Operating an allegedly infringing website constitutes "committing a tort in Florida" when the website is accessible in Florida and is actually accessed here. *See Volt, LLC v. Volt Lighting Grp. LLC*, 369 F. Supp. 3d 1241, 1245 (M.D. Fla. 2019) (Merryday, J.)[2] (reasoning that a "non-resident's website, although accessible in Florida, results in no tort 'committ[ed] within [Florida]' and fails to subject a non-resident to Florida's jurisdiction, unless a person in Florida views the website" (quoting *Marshall*, 39 So. 3d at 1203 (reasoning that "the material posted on the website about a Florida resident must not only be accessible in Florida, but also be accessed in Florida to constitute the commission of defamation within Florida"))).

---

[2] Moccio asserts that the long-arm statute is satisfied simply because BossBabe's online "presence [is] accessible in Florida." (Doc. 21 at 7.) Moccio cites two Eleventh Circuit opinions for the proposition that accessibility is sufficient. *See Lovelady*, 554 F.3d at 1283; *Mosseri*, 736 F.3d at 1354. But *Lovelady* was decided before the Florida Supreme Court announced that accessibility *and* evidence of access was required for defamation to occur in Florida. *See Marshall*, 39 So. 3d at 1216. And *Mosseri* did not have to consider *Lovelady's* viability after *Marshall* because it does not rely on accessibility alone. Instead, the long-arm statute was satisfied in *Mosseri* because the "trademark infringing goods were not only accessible on the website but were sold to Florida customers through that website." *Mosseri*, 736 F.3d at 1354. Although an academic point here, the Florida Supreme Court's holding in *Marshall* likely requires both accessibility and actual access. *See Volt, LLC*, 369 F. Supp. 3d at 1245 (applying *Marshall's* holding to trademark infringement and collecting cases doing the same).

The amended complaint says little about BossBabe's online presence—or its activity generally. Moccio asserts that "Defendant offers similar, if not identical services as Plaintiff and [uses Plaintiff's mark] in providing those services in Florida." (Doc. 4 at 4.) The amended complaint also asserts that "Defendant's advertising and services have been distributed in the trade area where [Moccio] does business." (Doc. 4 at 8.)

BossBabe attempts to rebut these allegations by offering affidavits. One affidavit avers that "BossBabe is not registered to conduct, and does not conduct, business in the State of Florida—whether online or by other non-electronic means." (Doc. 14-7 at 2.) But BossBabe also admits to having a website, (Doc. 14-2 at 2), admits to having a small number of customers in Florida, and admits that a small portion of its revenue comes from Florida, (Doc. 14-7 at 2–3).[3] It also admits to using the "BOSSBABE trademark" on affiliated online journals and blogs. (Doc. 14-2 at 2.) These admissions undermine BossBabe's assertion that it "does not conduct . . . business in the State of Florida." (Doc. 14-7 at 2.) Instead, the most reasonable inference[4] from BossBabe's admissions is that it has a website that is accessible in Florida and that Florida customers have accessed that website to purchase goods or services that bear the allegedly infringing "BossBabe" mark.

---

[3] The amount of revenue or customers is irrelevant. *See easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-cv-20062, 2020 WL 5500695, at *9 (S.D. Fla. Sept. 11, 2020). BossBabe need only have committed the intentional tort of trademark infringement in Florida once for the long-arm statute to apply.

[4] This Court must draw reasonable inferences in the plaintiff's favor where the evidence conflicts. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

*See 3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 1031, 1038 (M.D. Fla. 2019) (Covington, J.) (exercising personal jurisdiction based on undisputed allegations that defendant made sales through an infringing website to Floridians); *easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-cv-20062, 2020 WL 5500695, at *9 (S.D. Fla. Sept. 11, 2020) (reasoning defendant committed a tort in Florida when it had a Florida-accessible website on which Floridians purchased tickets); *see also Mosseri*, 736 F.3d at 1352 (disregarding defendant's affidavit stating that he "do[es] not conduct any business in Florida" because other evidence showed it "was demonstrably false"). Accordingly, this Court has personal jurisdiction pursuant to the Florida long-arm statute because BossBabe has allegedly committed the tortious act of trademark infringement through a website or online platform that is accessible and has been accessed in Florida by its customers. *See Volt, LLC*, 369 F. Supp. 3d at 1245; *Marshall*, 39 So. 3d at 1203.[5]

### ii. Due Process Jurisdiction Over BossBabe

Since BossBabe's alleged infringing activities in Florida satisfy Florida's long-arm statute, the next question is whether the Due Process Clause allows this Court to exercise personal jurisdiction. This Court concludes that it does.

---

[5] These admissions are also sufficient to find that BossBabe sold allegedly infringing products or services into Florida. *See Mosseri*, 736 F.3d at 1354 (concluding that an accessible website and evidence of sales of infringing goods into Florida is sufficient to constitute a tortious act in Florida); *easyGroup Ltd.*, 2020 WL 5500695, at *9.

The Fourteenth Amendment "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Horizon Aggressive Growth*, 421 F.3d at 1166 (quotation omitted). The inquiry turns upon the "relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977); it is usually structured into three requirements. First, the defendant's contacts with the forum must relate or give rise to the plaintiff's cause of action. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Second, those contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). That said, the defendant need "not *physically* enter the forum State." *Burger King*, 471 U.S. at 476. It is sufficient for the defendant to direct acts toward the forum or exercise the privilege of conducting business there. *See id.* at 472. Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). If a non-resident commits an intentional tort in the forum, that single act may be enough to establish minimum contacts. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.28 (11th Cir. 2009).

        1.     **Moccio's Claims Arise Out of BossBabe's Contacts With Florida**

"[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must 'arise out of or relate to' at least one of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quoting *Oldfield*, 558 F.3d at 1222).

Here, Moccio's trademark claims arise out of BossBabe's contacts with Florida. BossBabe's "ties to Florida all involve advertising, selling, and distributing of alleged [infringing goods and services] into the state and accepting payment from Florida customers." *Mosseri*, 736 F.3d at 1356; *see Alston v. www.Calculator.com*, 476 F. Supp. 3d 1295, 1316 (S.D. Fla. 2020) (finding a nexus between defendant's contacts to the forum and plaintiff's claim, in part, because defendant operated a "website for pecuniary benefit" with Florida customers); *easyGroup Ltd.*, 2020 WL 5500695, at *10 (finding a nexus because defendant "accepts payment from Florida customers following its use of the infringing trademarks on its Florida-accessible website").

Further, for purposes of Florida's long-arm statute, BossBabe has allegedly committed the intentional tort of trademark infringement in Florida, and an intentional tort is an act that creates a "substantial connection" with the forum state. *Lovelady*, 544 F.3d at 1285 (quoting *Burger King*, 471 U.S. at 475). Accordingly, there "is a direct causal relationship between [BossBabe], Florida, and [Moccio's] trademark claims." *Mosseri*, 736 F.3d at 1356 (finding this requirement "easily satisfied").

10

### 2. BossBabe Purposefully Availed Itself by Its Contacts With Florida[6]

The defendant's contacts with the forum must also "involve some act by which the defendant purposefully availed himself of the privilege of doing busines within the forum," such that the defendant should expect to be called into court there. *Mosseri*, 736 F.3d at 1357.

Based on its admissions that it has an online presence, (Doc. 14-2 at 3), has customers in Florida, (Doc. 14-7 at 3), and receives revenue from Florida, (*id.* at 2), this Court concludes that BossBabe has "purposefully availed [itself] of the privilege of doing business within the forum," *Mosseri*, 736 F.3d at 1357. Given BossBabe's knowledge that Moccio claims the mark it uses, (Doc. 14-2 at 2), BossBabe "could have reasonably foreseen being haled into a Florida Court." *Mosseri*, 736 F.3d at 1357.

### 3. Exercising Personal Jurisdiction Over BossBabe Does Not Offend Fair Play and Substantial Justice

Finally, personal jurisdiction over BossBabe must comport with "fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). In this inquiry, Courts ordinarily consider the burden on the defendant and the interests of the forum, the plaintiff, and the judicial system. *See Mosseri*, 736 F.3d at 1357 (citing *Lovelady*, 554 F.3d at 1288); *Burger King*, 471 U.S. at 476–77. The "defendant must make

---

[6] Because the Court concludes that Moccio satisfies the purposeful availment test it does not consider the alternative effects test established in *Calder v. Jones*. *See Calder v. Jones*, 465 U.S. 783 (1984); *see also Mosseri*, 736 F.3d at 1357 (discussing the *Calder* test and when it applies to intentional torts).

11

a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Bands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) (quoting *Burger King*, 471 U.S. at 477).

Though BossBabe argues that it has not availed itself of the forum and thus it would be unfair to exercise personal jurisdiction in Florida, it makes no argument that it would be prejudiced or unduly burdened by an adjudication in Florida. (Doc. 14 at 11–12); *see Alston*, 478 F. Supp. 3d at 1317 (concluding defendant had not carried its burden when it "provided no evidence or explanation" beyond "mere inconvenience").

On the other hand, the relevant interests point in favor of adjudication in Florida. First, "Florida had a strong interest in hearing the case and protecting consumers from confusion that results from trademark infringement." *Mosseri*, 736 F.3d at 1358; *see Lovelady*, 544 F.3d at 1288 (concluding that Florida had "a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida"). Second, Moccio has an "undeniable interest in litigating the case in [her] chosen forum," *Mosseri*, 736 F.3d at 1358, especially since Florida is the state where she alleges her trademark was infringed and her customers were confused. Finally, because this action has been pending since January 2021, (Doc. 1), and discovery is set to close on April 4, 2022, (Doc. 31), "the judiciary has an interest in efficiently resolving the dispute

12

in the forum where an extensive record [has been] established and the case [has been] long pending." *Mosseri*, 736 F.3d at 1358.

Given the lack of an identifiable burden on BossBabe and the interests pointing to proper adjudication in Florida, BossBabe has not made a "compelling case" that jurisdiction in Florida would be "unreasonable." *Burger King*, 471 U.S. at 477. Because all three portions of the Due Process inquiry are satisfied, the Court may properly exercise personal jurisdiction over BossBabe.

### B. The Middle District of Florida is a Proper Venue for This Action

In addition to its request to dismiss the action for lack of personal jurisdiction, BossBabe asks this Court to dismiss or transfer for improper venue under 28 U.S.C. § 1406.[7] (Doc. 14 at 13–15.) Because venue is proper in this district, this Court must deny BossBabe's request.

28 U.S.C. § 1391(b) provides that venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." For "non-physical torts," like trademark infringement, "courts generally hold that venue under section 1391([b])(2) is proper in the district where the injured party resides." *Cap. Corp. Merch. Banking v. Corp. Colocation, Inc.*, No. 6:07-cv-1626-ORL19KRS, 2008 WL

---

[7] 28 U.S.C. § 1406(a) provides that a "district court of a district in which a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

13

4058014, at *3 (M.D. Fla. Aug. 27, 2008) (Fawsett, J.) (collecting six district court orders from across the country applying this venue rule for non-physical torts). Venue may also be proper "where the defendant sells an allegedly infringing product." *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405, at *5 (M.D. Fla. Sept. 21, 2017) (Merryday, J.).

As explained above, BossBabe allegedly committed the tort of trademark infringement in Florida. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003) (observing that the venue statute "emphasizes the importance of the place where the wrong has been committed"). Moccio's claim arises directly from that tort, and she experienced the injury to her trademark in the vicinity of her Tampa business, (Doc. 4 at 1), an area within the Middle District of Florida. Accordingly, a "substantial part of the events" that gave rise to this cause of action occurred in Florida and within this District. § 1391(b)(3); *see LLW Enter. LLC v. Ryan*, 19-cv-1641, 2020 WL 2630859, at *14 (M.D. Fla. May 4, 2020) (Scriven, J.) (concluding that venue was proper where the alleged tort occurred and where the plaintiff suffered injury).

### C. The Middle District of Florida is a Convenient Forum for This Action

In the alternative to its other requests, BossBabe asks this Court to transfer this action to the Central District of California under 28 U.S.C. § 1404(a). (Doc. 14 at 14–21.) This Court denies BossBabe's request because it has not established that Moccio's choice

of the home forum "is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

Section 1404(a) provides that a district court "may transfer any civil action to another district or division where it might have been brought" to address the "convenience of the parties and witnesses" or if it is "in the interest of justice." There is "ordinarily a strong presumption in favor of the plaintiff's choice of forum," particularly when "the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–57 (1981). Accordingly, "the plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson*, 74 F.3d at 260. And the "burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

Upon review of the relevant factors,[8] BossBabe has not met its burden to show transfer is clearly warranted. For example, BossBabe's documents and witnesses are in California, (Doc. 14 at 17–18), while Moccio's documents and witnesses are in Florida, (Doc. 21 at 13–14). *See Healthe, Inc. v. High Energy Ozone LLC*, No. 6:20-cv-2233-RBD-EJK, 2021 WL 2939952, at *4 (M.D. Fla. Feb. 24, 2021) (Dalton, J.) (reaching a

---

[8] Relevant factors include the convenience of witnesses and parties; access to sources of proof; the geographic center of the action; the availability of process for reluctant witnesses; the parties' financial means; the forum's familiarity with the governing law; the plaintiff's choice of forum; and "trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) (applying similar factors for forum non conveniens).

15

similar conclusion). While the alleged infringer may have more relevant documents than the injured party, that difference is counterbalanced by the convenience of Florida consumers who may have to testify about their purchases of allegedly infringing goods or their confusion from BossBabe's use of a mark similar to Moccio's. (Doc. 21 at 13.) So, this factor is neutral.

Meanwhile, several factors point to adjudication in Florida. First, the "locus of operative facts" favors Florida since the tort giving rise to the claim occurred here. *Manuel*, 430 F.3d at 1135 n.1. Second, familiarly with governing law favors adjudication before this Court since Moccio asserts Florida common law claims. (Doc. 4 at 7–9.) And finally, since Moccio has chosen to litigate in her home forum, this Court must give a "strong presumption in favor" of that choice. *Piper Aircraft Co.*, 454 U.S. at 255–56 (adding that, when "the home forum has been chosen, it is reasonable to assume that this choice is convenient").

Therefore, this Court concludes that BossBabe has failed to "establish[] that the balance weighs strongly in favor of transfer." *Pelc v. Nowak*, No. 8:11-cv-79-T-17TGW, 2011 WL 4481571, at *6 (M.D. Fla. Sept. 27, 2011) (Kovachevich, J.). Instead, transferring this action to California "would merely shift inconvenience from the defendant[] to the plaintiff." *Robinson*, 74 F.3d at 260.

16

### D. Moccio's Request for Limited Discovery is Moot

In her response to BossBabe's motion to dismiss, Moccio asks this Court to grant limited discovery in lieu of dismissal or transfer. (Doc. 21 at 15–17.) BossBabe asserts that this request is procedurally and substantively flawed. (Doc. 25.) Because this Court denies BossBabe's motion in full, the Court denies Moccio's request as moot.

### E. Moccio's Amended Complaint is a Shotgun Pleading

A "shotgun pleading" is a broad term referring to violations of Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings," *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018), and have identified at least four types of these pleading errors, *see Weiland v. Palm Beach County Sherriff's Office*, 792 F.3d 1313, 1320–1323 (11th Cir. 2015) (discussing the history and types of shotgun pleadings). Moccio's amended complaint fits at least two of these types. *See Vibe Micro*, 878 F.3d at 1295 (describing the district court's authority to dismiss a complaint as a shotgun pleading).

One type of shotgun pleading is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321. That is exactly what Moccio has done. Count I incorporates

17

all preceding paragraphs, (Doc. 4 at 4), and Count II incorporates all the introductory paragraphs as well as all the substantive paragraphs of Count I, (Doc. 4 at 7).[9] The Eleventh Circuit has called "incorporat[ing] into successive counts all preceding allegations" a "quintessential 'shotgun' pleading—the sort of pleading [it has] been roundly condemning for 30 years." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1049 n.39 (11th Cir. 2014). But that is not all.

Another common form of "shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1323. Again, that is exactly what Moccio's amended complaint does. Count I includes claims for federal trademark infringement, false designation of origin, and unfair competition. (Doc. 4 at 4.) *See, e.g.*, *3Lions Publ'g*, 389 F. Supp 3d at 1039–41 (describing the differing elements of trademark infringement and false designation of origin claims); *D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1326, 1328–1331 (S.D. Fla. 2020) (treating trademark infringement under 15 U.S.C. § 1114(1) and false designation under § 1125(a) as separate claims). Count II has the same problem, including common law trademark infringement, false designation, and unfair competition claims. (Doc. 4 at 7.) As such, Moccio's complaint is "framed in complete disregard of the principle

---

[9] The only paragraph excluded from Count II's coverage is paragraph 16, which defines the scope of Count I. (Doc. 4 at 4, 7.)

18

that separate, discrete causes of action should be plead in separate counts." *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996).

The amended complaint may also be "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1332. To be fair, the allegations are not "immaterial." But the complaint's allegations about BossBabe's activities are "conclusory" and "vague," and since each Count raises three separate causes of action, these allegations are "not obviously connected to any particular cause of action." *Id.* Accordingly, it bears the "unifying characteristic of all types of shotgun pleadings": it fails to give BossBabe "adequate notice of the claims against [it] and the grounds upon which each claim rests." *Id.* at 1323. Because it constitutes a shotgun pleading in two—if not three—different ways, this Court strikes the amended complaint as a shotgun pleading.

## III.  CONCLUSION

Since this Court has personal jurisdiction over BossBabe and venue is proper and convenient in the Middle District of Florida, this Court denies BossBabe's motion to dismiss or for transfer to the Central District of California. The Court also strikes Moccio's amended complaint as a shotgun pleading.

Accordingly, the following is **ORDERED:**

19

1. Defendant BossBabe's Motion to Dismiss or Transfer (Doc. 14) is **DENIED**.

2. Plaintiff Moccio's request for limited jurisdictional discovery (Doc. 21) is **DENIED** as moot.

3. The Court **STRIKES** Moccio's Amended Complaint (Doc. 4) as a shotgun pleading. If Moccio intends to refile, she must remedy the errors explained above and file an amended complaint by October 25, 2021.

**ORDERED** in Tampa, Florida, on October 18, 2021.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge